IN THE UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF ARKANSAS
                          FAYETTEVILLE DIVISION

ARKANSAS TROPHY HUNTERS
ASSOCIATION, INC.                                                PLAINTIFF

            v.           Civil No. 06-5067

TEXAS TROPHY HUNTERS
ASSOCIATION, LTD.                                                DEFENDANT

                                 **O R D E R**

   Now on this 25th day of April, 2006, comes on for consideration plaintiff's **Motion For Temporary Restraining Order Or Preliminary Injunction** (document #2), and from said motion, the response thereto, and the evidence and arguments of counsel at a hearing held on April 21, 2006, the Court finds and orders as follows:

   1.   Plaintiff filed suit on April 13, 2006.  It asserted claims of trademark infringement; false designation of origin; and false advertising, in violation of **15 U.S.C. §1125(a)** (the Lanham Act").  There are pendent state claims under the Arkansas Deceptive Trade Practices Act, **A.C.A. §4-88-101 et seq**. and common law.[1]

   Plaintiff sought immediate injunctive relief, in view of a trade show planned by defendant to occur in Fayetteville, Arkansas, on April 28-30, 2006.  The show is being advertised as the Arkansas Trophy Hunters Association Hunters Extravaganza.

---

[1]The pending motion addresses only the claims brought under 15 U.S.C. §1125(a).

Defendant answered the Complaint and responded to the pending Motion on April 20, 2006, and appeared and participated in a hearing on the motion on April 21, 2006. Defendant was not, however, able to procure the attendance of witnesses on its behalf on such short notice. Instead, defense counsel made proffers of the testimony of Leroy Sisco, defendant's CEO, and Kenn Young, an Arkansas sportsman. Plaintiff stipulated that these witnesses would testify in accordance with such proffers, although it did not stipulate that the testimony was truthful or correct.

For its part, plaintiff presented documentary evidence, supporting affidavits, and the testimony of its sole shareholder, Donny Carmical.

It is with this evidentiary background that the Court turns to the issues raised by the motion.

2. The motion seeks two forms of relief: either a temporary restraining order or a preliminary injunction. Both are treated in **F.R.C.P. 65**. A temporary restraining order may issue without notice to the opposing party in circumstances where immediate and irreparable harm will result to the applicant before the opponent can be heard in opposition. Clearly that is not the situation in the case at bar, and the Court will, therefore, not view the issue as one for a temporary restraining order.

A motion for preliminary injunction is the appropriate vehicle to seek preliminary injunctive relief when the opposing

party has been served and can be heard on an issue.

  3. In order to establish its right to preliminary injunctive relief, plaintiff must satisfy the four factors set out in **Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981):**

-  Is there a threat of irreparable harm to the plaintiff?
-  What is the balance between harm to the plaintiff if injunctive relief is not granted, and harm to the defendant if it is granted?
-  What is the probability that plaintiff will succeed on the merits?
-  What is the public interest?

These factors cannot be looked at in isolation, but must be weighed and balanced together.

> In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*Id.* "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*

In Lanham Act cases, the Eighth Circuit has gone further, and held that "[w]ith regard to a preliminary injunction, the burden on the movant is heavy, in particular where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits." **United Industries Corp. v. Clorox Co.**, **140 F.3d 1175 (8th Cir. 1998)**(citations and internal quotation marks omitted).

It is with these principles in mind that the Court will examine the limited evidence that the parties were able to present on such short notice.

4. **Irreparable Harm** - Irreparable harm exists when there is no adequate legal remedy (such as the classic legal remedy of money damages) for a threatened injury. The Eighth Circuit has held that "[s]ince a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [plaintiff] can demonstrate a likelihood of consumer confusion." **General Mills, Inc. v. Kellogg Co.**, **824 F.2d 622 (8th Cir. 1987)**.

For the reasons set forth at ¶6, *infra*, the Court believes it unlikely that the issue of consumer confusion would be reached in this case, since it sees little likelihood that plaintiff will be able to demonstrate that its mark is protectable, and the consumer confusion issue must follow such a finding. In addition, to the extent that any presumption of irreparable harm might arise, the

-4-

Court believes that it was rebutted by the testimony of plaintiff's sole shareholder, Carmical, that he was willing to sell the company for $300,000. This testimony suggests that, in plaintiff's view, a sum of money would be adequate to compensate for whatever use of the mark defendant might make.

    5.    **<u>Balance of Harms</u>** - Carmical testified that if defendant is not immediately stopped from using the challenged mark, plaintiff will be destroyed. Defendant, for its part, represented (without giving any specifics) that it has spent a great deal of money preparing for the Hunters Extravaganza, which would be for naught if it is enjoined from putting on the show.

In the Court's view, the evidence in this regard indicates that plaintiff is essentially a dormant entity. According to Carmical, plaintiff has not solicited members since 2003. Its telephone number is not a working number. Its website went down in December, 2005, and no one noticed until March, 2006. It does no advertising - whether on radio, television, billboards, magazines, or on internet search engines such as Google. It does no mass mailings to solicit members. It has not had a presence at any trade show since January, 2004. The threatened harm to plaintiff is not, therefore, that a functioning business might be destroyed but, rather, that a fledgling business - which had barely gotten started before going dormant - might be impaired from further operations.

On the other hand, the risk of immediate harm to defendant is the loss of its investment in the trade show planned for April 28-30, 2006, and the risk of longer-range harm is the loss of its investment in setting up an Arkansas branch of its organization. While there was no evidence of the amount of monetary loss either of these results would entail, there was evidence that defendant had invested in billboard advertising and the painting of ads on the sides of at least one trailer, advertising the trade show. It had invested in a website and a telephone number for its planned Arkansas branch, published a magazine using the mark, mailed out membership solicitations, and registered the mark with both the Arkansas Secretary of State and the USPTO. These steps necessarily involved some expense.

Given these facts, the Court does not find that the balance of the potential harms favors granting preliminary injunctive relief to plaintiff.

6. **<u>Probability of Success on the Merits</u>** - The Court next examines the probability that plaintiff will succeed on the merits of any of its Lanham Act claims.

(a) **<u>The Trademark Infringement Claim</u>** - A trademark is "any word, name, symbol, or device or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that

source is unknown." **15 U.S.C. §1127.** In determining whether a trademark is protectable, courts first categorize it as either generic, descriptive, suggestive, or arbitrary.

> A generic mark is one that refers to the common name or the nature of an article, and most courts hold that it is not entitled to trademark protection. A descriptive mark designates the characteristics, qualities, effects, or other features of the product, and is protectable only if shown to have become distinctive, that is, shown to have acquired secondary meaning. Suggestive marks, which require imagination to reach a conclusion as to the nature of the goods, and arbitrary or fanciful marks, which are inherently distinctive, are entitled to immediate protection, without establishing secondary meaning.

**Co-Rect Products v. Marvy! Advertising Photography, Inc., 780 F.2d 1324 (8th Cir. 1985)**(internal citations omitted).

The mark here at issue, Arkansas Trophy Hunters Association, appears to fall into the category of a descriptive mark. One common definition of "trophy" is "spoils of the hunting field, especially when suitable for mounting." **Webster's Third New International Dictionary**. A trophy hunter, then, is a hunter who tries to kill an animal of such size or rarity that it would be considered suitable for mounting. The word "association" commonly denotes "an organization of persons having a common interest." *Id.* Thus the mark can be seen as descriptive of an organization of people in Arkansas who share a common interest in trying to kill animals suitable for mounting.

As a descriptive mark, it is protectable only if shown to

have "become distinctive" or "acquired a secondary meaning."  A mark acquires secondary meaning by long and exclusive use and advertising, so that it becomes so associated in the mind of the public with the plaintiff's goods that it serves to distinguish them from the goods of others.  **Co-Rect Products**, **780 F.2d at 1330.**

The Court does not find it likely that plaintiff can establish that its mark has acquired secondary meaning.  As set forth in ¶5, *supra*, the evidence suggests a very limited use of the mark between 2003 and the date of the hearing.  Because plaintiff's mark is unregistered, plaintiff bears the burden of establishing that it is protectable under trademark law.  **Frosty Treats Inc. v. Sony Computer Entertainment America Inc.**, **426 F.3d 1001 (8th Cir. 2005).**  On the limited evidence adduced so far, the Court is not persuaded that plaintiff has met this burden.  Thus, the Court cannot say there is a probability that plaintiff will succeed on the merits of this particular issue.

(b) **The False or Deceptive Advertising Claim** – To establish a claim of false or deceptive advertising, plaintiff must prove each of the following elements:

> (1) a false statement of *fact* by [defendant] about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has

been or is likely to be injured as a result of the false
statement.

**American Italian Pasta Co. v. New World Pasta Co.**, **371 F.3d 387 (8th Cir. 2004)**(emphasis in original).

There are two categories of false statements that are actionable: those that are literally false factually, and those that are literally true or ambiguous factually, but convey a false impression or are likely to deceive consumers. *Id.*

The Court does not consider it likely that plaintiff can satisfy all the elements required to prove this claim. Plaintiff has not shown that the use of "Arkansas" in defendant's mark is a false statement of fact, but argues that it is misleading because it falsely implies "Arkansas sponsorship" of defendant's organization and the Hunters Extravaganza. Where a plaintiff relies on a tendency to mislead, it must prove "that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients." **United Industries Corp. v. Clorox Co.**, **140 F.3d 1175 (8th Cir. 1998)**. Plaintiff's proof on that issue was that two of its members, and an acquaintance of one of its officers, called to inquire about sponsorship of the Hunters Extravaganza, and that one radio advertising salesman called to try to sell plaintiff air time about the show. The Court does not find this to be a "significant portion of the recipients" of the advertising here challenged.

There is also no evidence that defendant's use of "Arkansas" in its mark is likely to influence the purchasing decisions of its target audience. Plaintiff offered no evidence in support of its argument that "Arkansas hunters and other interested Arkansans would most likely be less enthused about attending an event sponsored by a Texas-based partnership," and the Court does not find this to be a self-evident fact.

The Court, therefore, concludes that plaintiff's likelihood of success on its false or misleading advertising claim is not high.

(c) **The False Designation of Origin Claim** - The parties do not focus on the false designation of origin claim, and the Court will simply note that there is a low probability of success on that claim as well. It would require proof that the defendant used a protected mark, **DaimlerChrysler AG v. Bloom**, **315 F.3d 932 (8th Cir. 2003)**, and the Court has already determined that plaintiff is unlikely to be able to prove that its mark is protectable.

7. **The Public Interest** - Neither party relies very heavily on this aspect of the **Dataphase** analysis, and the Court does not find it to be a turning point either. Obviously there is a strong public interest in free competition between merchants, and just as obviously there is a strong public interest in not subjecting the consuming public to false or misleading advertising. This factor,

therefore, does not tip the scales in favor of either party.

8. When weighing and balancing the four **Dataphase** factors, as analyzed above, the Court concludes that the balance of equities does not so favor the plaintiff that justice requires the Court to preserve the status quo until a trial on the merits can be held. The **Motion For Temporary Restraining Order Or Preliminary Injunction** (document #2) will, therefore, be **denied.**

**IT IS SO ORDERED.**

   /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**