```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  FAYETTEVILLE DIVISION
```

**ARKANSAS TROPHY HUNTERS**
**ASSOCIATION, INC.**                                      **PLAINTIFF**

       **v.**             **Civil No. 06-5067**

**TEXAS TROPHY HUNTERS**
**ASSOCIATION, LTD.**                                      **DEFENDANT**

### O R D E R

On the 22nd day of January, 2007, the captioned matter came on for trial to the Court, and from the evidence presented, and the arguments of counsel, the Court finds and orders as follows:

### Procedural History

1.  In this trademark infringement case, plaintiff claims that defendant has violated the Lanham Act by infringing its trademark, using a false designation of origin, and conducting false advertising, and has engaged in unfair competition under the Arkansas Deceptive Trade Practices Act and Arkansas common law. It seeks injunctive and compensatory relief.

Defendant counterclaims, alleging that plaintiff has engaged in federal statutory, and Arkansas common law, trademark infringement, unfair competition, false designation of origin/palming off[1], and trademark dilution. It seeks declaratory, injunctive, and compensatory relief.

Neither party requested a jury, and the matter was tried to the Court.

---

[1] The Court has found neither law nor evidence to support a state law theory of "palming off," nor has TTHA offered argument in regard to this claim, and the Court will treat it as abandoned.

**Findings of Fact**

2.   The Court makes the following findings of fact:

*   In 2003, several Arkansas hunters formed an organization they called the Arkansas Trophy Hunters Association ("ATHA"), which is the plaintiff in this lawsuit.  The goals of the organization centered on various hunting and fishing activities.

*   The organizers of ATHA were aware of the existence of a Texas group known as the Texas Trophy Hunters Association ("TTHA"), a Texas-based hunting organization which is the defendant herein.  TTHA engages in a variety of activities, particularly the sponsorship of trade shows and the publication of a magazine, <u>The Journal of the Texas Trophy Hunters</u>.

*   ATHA was incorporated in Arkansas on February 6, 2003.

*   Between its formation and March, 2006, ATHA had a few meetings, acquired a few members, held a few fish fries, sponsored a few hunts, and filmed a few hunts. It developed a logo and had some shirts, hats and window decals made up with the logo on them, some of which the members wore or used themselves and some of which they gave away.  It had a website which was sometimes operational, sometimes not.  It appears never to have been a financially viable business, nor a particularly vigorous one, but it continued to exist.

*   In the Fall of 2005, TTHA, which had been in business in Texas for some 30 years, decided to set up an Arkansas group using the name Arkansas Trophy Hunters Association.[2]  Like ATHA, TTHA did some

---

[2]Throughout this opinion, the Court has used "ATHA" to designate the plaintiff, and "Arkansas Trophy Hunters Association" to designate the name by which both plaintiff and defendant were doing business in Arkansas.

-2-

investigation to determine if its proposed name was already being used in Arkansas, and concluded that it was not. They then launched a large and well-funded marketing effort, including the production of logo-bearing hats, shirts and other give-aways; a mail-out soliciting membership; and plans for a trade show, the Hunters Extravaganza, to be held in Fayetteville, Arkansas, on April 28-30, 2006.

* On February 10, 2006, TTHA applied to the United States Patent and Trademark Office ("USPTO") to register the mark "Arkansas Trophy Hunters Association" in International Class 035, for "[a]rranging and conducting trade shows in the field of hunting and outdoor recreational activities."

* On February 14, 2006, TTHA applied to the USPTO to register the mark "Arkansas Trophy Hunters Association" in International Class 016, for "[m]agazines featuring game hunting, fishing, wildlife, and related recreational activities."

* On March 6, 2006, TTHA became aware of the existence of ATHA. Representatives of the two organizations talked, apparently amicably, about the possibility of making some arrangement with regard to the name they were both using, but no conclusions were reached.

* On March 8, 2006, the Arkansas Secretary of State granted TTHA a Certificate of Trademark for the mark "ARKANSAS TROPHY HUNTERS" to use on "[m]agazines featuring game hunting, fishing, wildlife, and related recreational activities."

* On April 13, 2006, ATHA filed this lawsuit, seeking to enjoin the trade show planned to start April 28, 2006. A hearing was promptly held and this Court denied the injunction.

* On May 2, 2006, the Arkansas Secretary of State granted TTHA

-3-

a Certificate of Service Mark Registration for the mark "ARKANSAS TROPHY HUNTERS ASSOCIATION" for the use of "[a]rranging and conducting trade shows in the field of hunting and outdoor recreational activities."

\*   On August 1, 2006, the USPTO refused both of TTHA's applications to register the name "Arkansas Trophy Hunters Association" on the Principal Register.[3] The applications were refused on the basis that the mark is merely descriptive. In refusing the Class 035 application, the USPTO noted that "the mark is primarily geographically descriptive of the origin of applicant's services," and that "[t]he addition of a generic or merely descriptive term to a geographic term does not obviate a determination of geographic descriptiveness. . . . Thus the addition of the descriptive wording TROPHY HUNTERS ASSOCIATION for a group of trophy hunters, does not obviate the geographical significance of the term ARKANSAS." In refusing the Class 016 application, the USPTO noted that "the proposed mark merely describes the subject matter of applicant's publication and/or the primary audience for the applicant's publication. . . . the wording ARKANSAS TROPHY HUNTERS ASSOCIATION merely describes the subject matter and/or intended user of the magazine that pertains to a group of trophy hunters in Arkansas."

### Conclusions of Law

3.   <u>Lanham Act Trademark Infringement Claims</u>:

The Lanham Act, **15 U.S.C. §1051 et seq**. "prohibits the use of a

---

[3]The Lanham Act creates both a "Principal" and a "Supplemental" register. Registration on the Principal Register is *prima facie* evidence of the registrant's exclusive right to use a mark in commerce in connection with the goods or services specified in the registration. 15 U.S.C. §1115(a). Registration on the Supplemental Register does not convey substantive rights beyond those available at common law. <u>In re American Fertility Society</u>, 188 F.3d 1341 (Fed Cir. 1999).

mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services." **Davis v. Walt Disney Co.**, **430 F.3d 901 (8th Cir. 2005); 15 U.S.C. §1125(a)(1).** Equivalent protection from infringement and unfair competition is afforded to both registered and unregistered marks. **Everest Capital Ltd. v. Everest Funds Management, L.L.C.**, **393 F.3d 755, 759 (8th Cir. 2005).**

The first step in proving a claim under the Lanham Act is to establish that a mark is protectible. Trade or service marks are categorized as either generic, descriptive, suggestive, or arbitrary. A generic mark is never protectible, and descriptive marks generally are not protectible, while suggestive and arbitrary marks are "inherently distinctive and protectible." **Schwan's IP, LLC v. Kraft Pizza Co.**, **460 F.3d 971 (8th Cir. 2006).** It can thus be seen that the starting point for the Court's analysis of the Lanham Act claims is to determine whether the mark "Arkansas Trophy Hunters Association" is protectible.

A descriptive mark uses terms that "describe[] the ingredients, characteristics, qualities, or other features of the product and may be used as a trademark only if it has acquired a secondary meaning." *Id*. The rationale for affording protection to suggestive or arbitrary marks, while not granting that same protection to descriptive marks, is that descriptive terms "are needed to describe all goods of a similar nature. Such a term describes the ingredients, characteristics, qualities, or other features of the product and may be used as a trademark only if it has acquired a secondary meaning." In order to be entitled to protection, "a descriptive term must be so associated with the product

that it becomes a designation of the source rather than of a characteristic of the product." *Id*.

Following a hearing on the issue of preliminary injunctive relief, this Court ruled that "Arkansas Trophy Hunters Association" appears "to fall into the category of a descriptive mark." The evidence adduced at the plenary trial of the matter has not altered the Court's conclusion on that crucial issue. While the word "trophy" might, it is true, have a secondary meaning, because there are "trophies" other than animals which are hunted for sport (for example, athletic trophies or trophy wives), those trophies are not "hunted" so much as "won," "vied for" or "sought after." When the words "trophy" and "hunters" are combined, the phrase is, in the Court's view, simply and clearly descriptive of people who try to kill animals of sufficient size, age, or rarity to be considered suitable for mounting. The addition of the word Arkansas does not change the analysis. The Court agrees with the USPTO that "Arkansas" is primarily geographically descriptive, and "trophy hunters association" is merely a descriptive term.

Nor was there any testimony from which the Court could conclude that the mark is so closely associated with the services rendered by either plaintiff or defendant that it has become "a designation of the source rather than of a characteristic of the product." There being no secondary or acquired meaning to this descriptive mark, the Court concludes that the mark "Arkansas Trophy Hunters Association" is not entitled to trademark protection under the Lanham Act.

The Court likewise rejects any contention that ATHA's use of the name Arkansas Trophy Hunters Association is causing -- or could cause --

-6-

mistake, confusion or deception *vis a vis* TTHA's use of its marks Texas Trophy Hunters Association or <u>The Journal of the Texas Trophy Hunters</u>. The Lanham Act analysis, *supra*, applies to the mark Texas Trophy Hunters Association, which does not appear to be registered.  The mark <u>The Journal of the Texas Trophy Hunters</u>, for which TTHA obtained federal registration in 2000, is simply too different from "Arkansas Trophy Hunters Association" to generate any confusion.  The marks contain only two words in common, the descriptive phrase "trophy hunters," and the use of a state identifier is sufficient to avoid confusion between the two.  People do not accidentally show up for the Texas State Fair on the date advertised for the Arkansas State Fair, or mistakenly attend a meeting of the Arkansas Bar Association when what they wanted was to attend a meeting of the Texas Bar Association.  Nor did TTHA offer evidence of confusion that would contradict the logic of this analysis.

For all these reasons, the federal trademark infringement claims of both parties will be denied.

4.    <u>Lanham Act False Designation of Origin Claims</u>:

The analysis of protectibility applies equally to the parties' Lanham Act claims of false designation of origin, **<u>DaimlerChrysler AG v. Bloom</u>**, **315 F.3d 932 (8th Cir. 2003)**, and those claims will also be denied.

5.    <u>Lanham Act False Advertising Claim</u>:

A claim of false advertising under the Lanham Act involves a different analysis.  A plaintiff must establish:

* \*     a false statement of fact by defendant about its own or another's product;

- \* which has deceived, or has a tendency to deceive, a substantial segment of the advertising audience;
- \* and which is material, in that it is likely to influence a purchasing decision;
- \* which statement has entered interstate commerce; and
- \* which injures, or is likely to injure, the plaintiff.

**American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387 (8th Cir. 2004).**

An actionable false statement may be either literally false factually, or may be literally true or ambiguous factually, but convey a false impression or be likely to deceive consumers. *Id.* Where a plaintiff relies on a "tendency to mislead" theory, it must prove "that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients." **United Industries Corp. v. Clorox Co., 140 F.3d 1175 (8th Cir. 1998).**

ATHA's false advertising theory appears to be that TTHA's use of "Arkansas Trophy Hunters Association" tends to mislead consumers into believing that they are dealing with an organization which has its roots in Arkansas, rather than one rooted in Texas. ATHA failed, however, to offer evidence that a significant portion of those who saw any advertising by TTHA of its Arkansas organization were actually deceived, and its Lanham Act false advertising claim fails on that account.

6. <u>Unfair Competition under the Arkansas Deceptive Trade Practices Act</u>:

ATHA asserts a claim of unfair competition under the Arkansas Deceptive Trade Practices Act ("ADTPA"), which prohibits "[k]nowingly

-8-

making a false representation as to the . . . sponsorship. . . of goods or services." **A.C.A. §4-88-107(a)(1).** It is not necessary, however, for the Court to decide whether TTHA, in using the trade name "Arkansas Trophy Hunters Association," knowingly misrepresented the sponsorship of its trade show. That is because in order to prove its ADTPA claim, ATHA must establish that it has suffered "actual damage or injury as a result of an offense or violation as defined" in the ADTPA. **A.C.A. §4-88-113(f).** ATHA offered no evidence of actual damage which would support a claim under the ADTPA, and that claim will be denied.

    7.   Common Law Unfair Competition Claims:

Under Arkansas common law, when a trademark "has acquired a secondary meaning, the original user has a property right which equity will protect against unfair appropriation by a competitor." **Tri-County Funeral Service, Inc. v. Eddie Howard Funeral Home, Inc.**, **330 Ark. 789, 957 S.W.2d 694 (1997).**

The concept of "secondary meaning" under Arkansas common law is similar to that under the Lanham Act:

> There are certain names, marks, and symbols which in their primary sense are merely generic or descriptive and do not ordinarily indicate the origin of goods or services. Such names, marks, or symbols, when used in their primary sense, cannot form the subject matter of a trade or service mark. However, a name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods and services may become so associated in the public mind with such goods or services that it serves to identify them and distinguish them from the goods or services of others. When such an association exists, the name, mark, or symbol is said to have acquired "secondary meaning" in which the original user has a property right which equity will protect against unfair appropriation by a competitor.

**Tri-County**, *supra*, quoting **Liberty Mutual Insurance Co. v. Liberty Insurance Co. of Texas**, **185 F.Supp. 895 (E.D. Ark. 1960).**

For the same reasons that the Court finds no secondary meaning in the mark at issue under the Lanham Act, it concludes that neither party has shown the acquisition of secondary meaning under Arkansas common law, so as to entitled it to recover on that theory.

8. <u>Arkansas Statutory Trademark Infringement Claim</u>:

Because its marks "ARKANSAS TROPHY HUNTERS" and "ARKANSAS TROPHY HUNTERS ASSOCIATION" are registered in the State of Arkansas, TTHA seeks relief under the Arkansas statutory scheme dealing with trademarks, found at **A.C.A. §4-71-201 et seq. A.C.A. §4-71-212** prohibits the use, without consent, of a registered mark or any "reproduction, counterfeit, copy, or colorable imitation" of such a mark. Relief under the statutory scheme is limited to injunctive relief unless based on actions "committed with the intent to cause confusion or mistake or to deceive."

TTHA has registered the mark "ARKANSAS TROPHY HUNTERS" to use on "[m]agazines featuring game hunting, fishing, wildlife, and related recreational activities," and the mark "ARKANSAS TROPHY HUNTERS ASSOCIATION" for the use of "[a]rranging and conducting trade shows in the field of hunting and outdoor recreational activities." The Court finds no basis to grant any form of relief on the strength of these registrations, because there is neither allegation nor evidence that ATHA has any plans to hold a trade show or publish a magazine. Nor is there any evidence of intent to cause confusion, mistake, or deception.

While the Court recognizes that, under the Arkansas scheme, a "merely descriptive" mark is not properly registrable at all, it has not treated ATHA's pleadings as a challenge to the registrations in question. ATHA did not pray for cancellation of the registrations and

did not carry out the proper procedures for mounting a challenge to the registrations under the statute. Thus, its pleadings do not suffice as a challenge to the registrations.

    9.   <u>Trademark Dilution Claims</u>:

Finally, TTHA claims that ATHA diluted its mark. Dilution claims are different from infringement claims. "Prohibiting trademark infringement protects trademark owners and consumers from likely confusion. Prohibiting trademark dilution, on the other hand, protects the holder of a famous trademark from misappropriation of its investment in the mark." **Everest Capital Ltd.**, *supra*, **393 F.3d at 762**.

To be eligible for "dilution protection," a mark must be famous. Eight criteria are listed in the statute for evaluating "fame":

- \* degree of inherent or acquired distinctiveness of the mark;
- \* duration and extent of use of the mark;
- \* duration and extent of advertising and publicity of the mark;
- \* geographical extent of the trading area in the mark is used;
- \* the channels of trade for the goods/services with which the mark is used;
- \* degree of recognition of the mark in those trading areas and channels;
- \* nature and extent of similar marks used by third parties;
- \* whether the mark was registered as of 1881, 1905, or on the "principal register."

TTHA's claim fails when measured by these criteria, whether the contention is related to the mark "Texas Trophy Hunters Association" or the mark "Arkansas Trophy Hunters Association." These marks are not inherently distinctive but merely descriptive, and have not acquired

-11-

distinction, i.e., secondary meaning. They are used only in a very narrow channel of trade, or niche market, and are not on the Principal Register.

Fame is "a rigorous standard. 'Dilution is a cause of action invented and reserved for a select class of marks -- those marks with such powerful consumer associations that even non-competing uses can impinge their value'." *Id.*, quoting **Avery v. Dennison Corp. v. Sumpton**, **189 F.3d 868 (9th Cir. 1999)**. It cannot be seriously contended that TTHA's use of "Arkansas Trophy Hunters Association" or even "Texas Trophy Hunters Association" meets this rigorous standard -- even in the niche market of hunting organizations. Nor has the Eighth Circuit recognized a niche market dilution cause of action at this point. See **Frosty Treats Inc. v. Sony Computer Entertainment America, Inc.**, **426 F.3d 1001 (8th Cir. 2005)** and **Everest Capital, Ltd.**, *supra*. The Court therefore concludes that TTHA's federal dilution claim should be denied.

The corresponding claim for dilution under state law must be denied for the same reasons. The provisions made under Arkansas law to prevent dilution follow the same "famous mark" analysis, and the same criteria for fame are used. **A.C.A. §4-71-213.**

**IT IS THEREFORE ORDERED** that all claims of both parties herein are **dismissed with prejudice**, with each party to bear its own costs and attorney's fees.

**IT IS SO ORDERED,** this 5th day of February, 2007.

                                      /s/ Jimm Larry Hendren
                                      **JIMM LARRY HENDREN**
                                      **UNITED STATES DISTRICT JUDGE**